IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**AFRAH H.,**[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

Civ. No. 6:22-cv-00424-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Afrah H. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") partially denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Commissioner concedes that the Administrative Law Judge's ("ALJ") decision contains legal error but argues that the appropriate remedy is to remand for further proceedings. Because the record has been fully developed and further proceedings would serve no useful purpose, the Commissioner's decision is REVERSED and this case is REMANDED for award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on July 21, 2016 and alleged disability beginning that same day. Tr. 127. Her claim was denied initially and upon reconsideration. *Id.* Plaintiff appeared before an Administrative Law Judge on March 7, 2019. *Id.* The ALJ issued a partially favorable decision, finding Plaintiff disabled from July 21, 2016 through June 30, 2018. Tr. 123–127. The ALJ found Plaintiff not disabled beginning July 1, 2018 based on medical improvement that allowed her to work. Tr. 127. The Appeals Council granted Plaintiff's request for review and remanded the case to a new ALJ for consideration of additional evidence. Tr. 148–50. Plaintiff's remand hearing was held on October 6, 2020. Tr. 16. On remand, a second ALJ again issued a partially favorable decision, finding the same disability and non-disability periods as the first ALJ. Tr. 12– 17. The Appeals Council denied review, and Plaintiff now seeks judicial review of the Commissioner's final decision finding her not disabled beginning July 1, 2018.[2]

Plaintiff, a 48-year-old Iraqi woman, moved to the United States in 2006 after witnessing the murders of her father and brothers in Iraq. Tr. 54, 1301. She is illiterate, has no formal education, does not speak English, and has never worked a job. Tr. 81–82, 1318–19. Plaintiff lives with her husband, who suffered physical torture in Iraq, and her two kids. *Id.* She suffers from severe PTSD and schizoaffective disorder, depressed type. Tr. 1320.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

---

[2] The parties do not dispute the ALJ's disability finding from July 21, 2016 through June 30, 2018. Def.'s Br. 2, ECF No. 16.

2 – OPINION AND ORDER

2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

The ALJ here found that Plaintiff had the following severe impairments: PTSD and a mood disorder. Tr. 20, 26.[3] Next, he found that from July 21, 2016 to June 30, 2018, Plaintiff's severe impairments met the listing criteria for depressive, bipolar, and related disorders as well as trauma and stressor-related disorders. Tr. 20–21. The ALJ therefore found Plaintiff disabled during that period. Tr. 26. He found, however, that Plaintiff's symptoms had improved beginning in July 2018 such that she no longer met the listing criteria. *Id.* Accordingly, the ALJ went on to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms beginning on July 1, 2018, and found them inconsistent with the medical evidence. Tr. 28–29. The ALJ ultimately determined that Plaintiff was not disabled beginning July 1, 2018. Tr. 32.

In finding her not disabled, Plaintiff argues the ALJ erred in three ways: (1) improperly discrediting Plaintiff's symptom testimony, (2) improperly discounting two medical opinions, and (3) failing to properly account for Plaintiff's education in formulating her RFC. Pl.'s Br. 1–2, ECF No. 13. The Commissioner concedes the third error, but argues that further proceedings are warranted to evaluate Plaintiff's education level and address other conflicts in the record concerning whether Plaintiff's condition improved. Def.'s Br. 2–4, ECF No. 16.

Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of

---

[3] Both the first and second ALJ found the same severe impairments and the same periods of disability and non-disability. Both written decisions are quite similar, except for the second ALJ's consideration of new evidence. For simplicity, the Court refers to "the ALJ" singularly.

benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if these three factors are met, the Court must remand for further proceedings when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Plaintiff acknowledges that if the ALJ's only error was improperly evaluating Plaintiff's education level, then remand for further proceedings would be appropriate. Pl.'s Reply 1, ECF No. 17. Plaintiff asserts, however, that the ALJ also erred in evaluating Plaintiff's symptom testimony and the opinion evidence of two medical providers. In light of these errors, Plaintiff contends that remand for award of benefits is warranted. *Id.* For reasons explained below, the Court agrees with Plaintiff.

**I. Plaintiff's Symptom Testimony**

An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom

5 – OPINION AND ORDER

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Plaintiff suffers from severe PTSD after witnessing the murders of her father and brothers while living in Iraq. Tr. 54, 1301. She received no formal education and has never worked a job. Tr. 81–82, 1318–19. She is illiterate and cannot speak English. *Id.* Plaintiff testified that she is afraid to leave the house. Tr. 82–84. If she leaves by herself, she forgets where she came from or how to get back home. Tr. 84. She has crying spells often where she starts shaking, freezes up, and can't do anything. *Id.* Plaintiff's husband and kids do all the cleaning and cooking because Plaintiff doesn't want to touch anything. Tr. 85. She has difficulty focusing and gets stressed and angry when she is tasked with anything. Tr. 83, 85. Plaintiff does not know how to take her own medications and receives help from her husband and son. Tr. 83. At the remand hearing, Plaintiff's husband testified similarly. He stated that Plaintiff cries all the time. Tr. 55–56. He explained that Plaintiff's medications help to calm her down, but also prevent her from moving around much. *Id.* During the Covid-19 pandemic, Plaintiff's husband explained that Plaintiff was afraid her kids would die and began frequently spraying the house and the kids so they could clean their hands. Tr. 57. He and his sons were still doing the cleaning around the home, like vacuuming and laundry, while Plaintiff was just spraying everything. *Id.*

The ALJ discredited Plaintiff's symptom testimony as inconsistent "because the medical record and the testimony of the impartial medical expert shows her symptoms improved" as of June 30, 2018. Tr. 29. The ALJ noted that Plaintiff reported improved memory and reduced

6 – OPINION AND ORDER

startle response and anxiety in May 2018. Tr. 26–27. In June 2018, Plaintiff noted improvements in memory, depression, and anxiety, and that medications were treating her symptoms. Tr. 27 The ALJ pointed out that Plaintiff went to her son's school and met with his teachers in March 2018, and travelled "by herself" to California at the end of 2018. *Id.* The ALJ found that, beginning July 1, 2018, Plaintiff's insight was adequate and her short-term memory and concentration were intact. *Id.*

The ALJ relied heavily on counseling notes from January 2019 that showed improvement in Plaintiff's symptoms. Tr. 28. Plaintiff's counselor found Plaintiff was managing her anxiety well and able to perform household chores and personal care. *Id.* Plaintiff was calm, well-groomed, and had appropriate eye contact upon examination. *Id.* The ALJ also cited to the medical expert's testimony from the hearing in March 2019 that Plaintiff's anxiety reduced from a 9 to a 4 and her depression symptoms from an 8 to a 5 in November 2018. *Id.* The expert stated that Plaintiff's negative thoughts had improved and that she was now able to take medications herself. *Id.* The ALJ considered new evidence from 2019 and 2020, finding the records reflected Plaintiff's ability to use psychotherapy skills of relaxation and mindfulness to manage her symptoms. Tr. 29.

After review of the record, the Court finds that the ALJ cherry-picked isolated instances of improvement to support his conclusion that Plaintiff was capable of working after July 2018. Namely, the ALJ relied on a few therapy notes from June 2018 to January 2019 where Plaintiff reported instances of improved symptoms. The ALJ, however, ignored multiple notes from the same period where Plaintiff reported the opposite. For example, on July 25, 2018, Plaintiff reported that "things have been difficult for two or three weeks with increased depression, anxiety, as well as increased fears." Tr. 831. Her therapist noted a depressed mood and

7 – OPINION AND ORDER

constricted affect. *Id.* On August 3, Plaintiff continued to endorse "perseveration and worry regarding her family at home in Iraq and her children at school." Tr. 833. Plaintiff reported increased anxiety on September 6. Tr. 836. Though Plaintiff reported some improvement with her mental health generally in October 2018, Plaintiff reported in January 2019 that she still struggles with worry, getting distracted, and not completing household tasks. Tr. 1287. Her treating provider, James Miller, M.D., stated that Plaintiff "remains disabled and significantly impaired by her symptoms and this has become a chronic state even at this level of treatment. *Id.* On January 17, Plaintiff reported "working on managing symptoms of dissociation when she is doing housework." Tr. 1289. On January 31, Plaintiff reported "experiencing some distress with taking a shower because she remembers that she was in the bathroom when her brother called to inform her that her brothers and father had been murdered." Tr. 1290. Plaintiff managed this by "having her husband nearby when she goes to take a shower, and he talks to her." *Id.*

The ALJ also relied heavily on an annual mental health assessment from January 2019 where Plaintiff said she "felt better." *See* tr. 26, 28. The ALJ noted that Plaintiff was "conversing with her sons," "makes tea," and "is able to travel." Tr. 28. At the assessment, Plaintiff was calm, well-groomed, and had appropriate eye contact. *Id.*

Of course, the ALJ conveniently ignored the final paragraph of the assessment, where Plaintiff's therapist explained:

> Afrah is a 43 year old married woman from Iraq. She left Iraq shortly after witnessing the murders of her brothers and father in 2006. Since this time she has experienced significant symptoms of PTSD, including disturbed sleep, loss of interest, loss of enjoyment, isolation and feeling excessive guilt, impaired concentration, intrusive memories, nightmares, flashbacks, emotional/physical distress when reminded of the event. She exhibits avoidance of trauma related reminders of the event, such as avoiding watching the news. Her family is careful not to discuss anything that will remind her of the trauma. In addition, she experiences hypervigialence [sic] and difficulty [sic] concentrating, as well as

8 – OPINION AND ORDER

increased dissociative symptoms. Plan to continue therapy to cope with these symptoms, coordination with family, case management for SSI.

Tr. 1301. In April 2019, Dr. Miller stated "the stress that had been building at the last visit has continued to grow with [Plaintiff] being fairly tearful on an ongoing basis, anxious, more irritable. She says that she can't eat and that she has no interest in food and sleep is more disrupted. She is feeling more depressed." Tr. 1334. Soon after, Plaintiff reported "increased depressive and anxiety symptoms, so much so that her eyes are blurry from crying." Tr. 1336. Her husband endorsed that Plaintiff was having difficulty with basic daily activities. *Id.* Her therapist noted that Plaintiff "present[ed] as depressed, with slow speech and functions." *Id.*

Later in April 2019, Kay Dieter, M.D. performed a mental health evaluation of Plaintiff, concluding with the following assessment:

> She is a 43-year-old, married, Iraqi female with very severe posttraumatic stress from multiple traumatic experiences of her brother and father being killed, of people she doesn't even know being shot and killed and bombs dropped who has had a very depressed and anxious overlay, ruminating about the past. Certainly, the medications have helped a little bit with her mood but she still has very severe symptoms of PTSD and anxiety spectrum symptoms. She has the support of her family and her husband and her sons but the rest of her family are not readily available. She has not had any drug or alcohol symptoms or any legal issues. I would guess that her husband likely has severe PTSD himself and they are still having difficulties transitioning to America and feeling supported.

Tr. 1339. In August 2019, Plaintiff presented on examination with a depressed mood, constricted affect, impoverished thought processes, and profound psychomotor retardation. Tr. 1346. In a November 2019 exam, Plaintiff's speech was "almost nonexistent" with intermittent eye contact. Tr. 1348. In December 2019, Plaintiff's mood and sleep improved with help of her medications, but Plaintiff was "still very dependent on her husband for cues on taking her medicines, eating and such. She is essentially not functional with outside the house activities such as groceries" due to the "level of anxiety still present and fears around other people." Tr. 1353. Finally, in

9 – OPINION AND ORDER

October 2020, Plaintiff reported "having an especially difficult time," "feeling more depressed on a consistent basis," and "having difficulty engaging in her activities." Tr. 1491. At this exam, Dr. Miller found that "recent triggering of [Plaintiff's] PTSD plus neurovegetative symptoms of major depressive are severely impairing and she is minimally functioning in her home environment." Tr. 1491.

The Ninth Circuit has repeatedly emphasized that, in the context of mental health issues, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*

Plaintiff's therapy records reveal that her symptoms continued to wax and wane, as is common with mental health impairments. Though Plaintiff experiences some periods of improvement, she still consistently presents with significant worry, fear, depression, distraction, and dissociation as a result of her psychological impairments. The ALJ erred by isolating a few instances of improved symptoms instead of considering the "overall diagnostic picture" and whether Plaintiff's "impairments no longer seriously affect[ed] her ability to function in a workplace." *Id.*[4]

---

[4] The Court is also not convinced by the ALJ's reliance on the medical expert who reviewed the record and testified at Plaintiff's first hearing in March 2019. Dr. Strahl testified that Plaintiff began showing improvement by mid-2018 such that the severity of Plaintiff's symptoms no longer met the listing criteria. Tr. 74–75. Dr. Strahl's opinion that Plaintiff's symptoms no longer met the listing criteria is not a clear and convincing reason to discount Plaintiff's testimony. Indeed, when the ALJ discussed Dr. Strahl's testimony, he failed to explain how it conflicted with any portion of Plaintiff's testimony. *See* tr. 28. Further, Dr. Strahl did not review any records from April 2019 onward which, as discussed above, show severely impairing symptoms and an overall unimproved condition.

10 – OPINION AND ORDER

**II. Medical Opinion Evidence**

The ALJ gave little weight to the medical opinions of Plaintiff's treating physician, Dr. Miller, and an examining physician, Dr. Dieter. Tr. 29–31. The ALJ erred in doing so.

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison*, 759 F.3d at 1012.[5] The opinions of treating sources are generally entitled to controlling weight, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).

**A. Dr. Miller**

The ALJ gave little weight to two opinions of Dr. Miller, Plaintiff's treating physician. The ALJ found that both opinions largely echoed one another but were internally inconsistent. Tr. 30–31. Dr. Miller submitted a functional assessment of Plaintiff's work-related mental activities in November 2018. He opined that Plaintiff had several marked and severe limitations

---

[5] Because Plaintiff's claim was filed before March 27, 2017, the regulations requiring a hierarchical evaluation of medical opinions applies here.

11 – OPINION AND ORDER

in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 1316–17. He explained that Plaintiff "continues to have severe dysfunction related to PTSD. Treatment has relieved some symptoms, but there are significant residual problems." Tr. 1317. In October 2020, Dr. Miller provided another functional assessment of Plaintiff's work-related limitations on a similar form. Tr. 1488–90. He noted many of the same marked and severe limitations in all areas of functioning, though noted that some of Plaintiff's limitations had improved in a few areas. *Id.* Tr. 1488–89. On the following page of the 2020 submission, Dr. Miller assessed whether Plaintiff met the listing criteria for trauma and stressor-related disorders, indicating that she did. Tr. 1490.

      The ALJ failed to identify any internal inconsistency in Dr. Miller's reports. The functional work limitations Dr. Miller assessed in 2018 and 2020 generally mirror each other. In the 2020 submission, Dr. Miller provided the additional assessment of Plaintiff's eligibility for listing criteria. Dr. Miller's assessment regarding the listing criteria is not inconsistent with his assessment of Plaintiff's functional limitations in the workplace. For example, Dr. Miller determined Plaintiff was severely limited in understanding and remembering detailed instructions in his functional assessment. Tr. 1488. For the listing criteria, he determined that Plaintiff had an extreme limitation in understanding, remembering, and applying information. Tr. 1490. These are not inconsistent with one another, as the ALJ contends. *See* tr. 30. The ALJ also found Dr. Miller's limitations "wholly inconsistent with [Plaintiff's] demonstrated ability to manage her own care and be an active participant in her health, as well as more normal findings from mental examinations detailed above." Tr. 30–31. As discussed above, the record reflects that Plaintiff remained incapable of caring for herself in several respects, and her mental

examinations were far from normal. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Miller's opinions.

### B. Dr. Dieter

The ALJ also gave little weight to Dr. Dieter's opinion, an examining physician. Tr. 29. In April 2019, Dr. Dieter completed a comprehensive mental health assessment of Plaintiff and provided functional limitations. Tr. 1318–23. Dr. Dieter explained that Plaintiff's "medications have helped a little bit with her mood but she still has very severe symptoms of PTSD and anxiety spectrum symptoms." Tr. 1320. She opined that Plaintiff is "clearly quite severely disabled and unable to maintain gainful employment." *Id.* Dr. Dieter determined that Plaintiff has severe limitations in all areas of functioning, including understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 1321–23. She explained that Plaintiff "has very poor memory, concentration or attention" and "cannot even make simple decisions." Tr. 1321–22. Dr. Dieter opined that Plaintiff requires 24/7 supervision, noting that Plaintiff is unable to use the bus or travel because she feels that everything is very dangerous. Tr. 1322–23.

The ALJ found Dr. Dieter's opinion "wholly inconsistent with the record" as to the period of non-disability. Tr. 30. He claimed Dr. Dieter failed to provide analysis linking specific facts to conclusions and exaggerated Plaintiff's limitations based on Plaintiff's own reports to treating physicians. *Id.* The ALJ referred to Plaintiff's report to Dr. Miller in February 2019 that she was doing "fair" and had normal speech. *Id.* He also referred to an appointment Plaintiff had at a pain clinic where her short-term memory, attention, and concentration were intact. *Id.* None of these are specific and legitimate reasons to reject Dr. Dieter's opinion. Dr. Dieter conducted a comprehensive mental health evaluation followed by a functional limitations assessment, which

13 – OPINION AND ORDER

contained written explanations for each category of limitations. She sufficiently linked facts from the evaluation to her conclusions regarding limitations. Additionally, though Plaintiff reported she was doing fair in February 2019, during that same exam she reported spending a lot of time worrying, getting distracted, and not completing household tasks. Tr. 1287. Dr. Miller also noted at that exam that Plaintiff "remains disabled and significantly impaired by her symptoms and this has become a chronic state even at this level of treatment." *Id.* At the pain clinic appointment where Plaintiff's short-term memory and attention were check marked as "intact" and "good," Plaintiff's eye contact was poor and her mood was depressed. Tr. 1278–79. She was also noted at that appointment to have "severe levels of anxiety and depression" based on high GAD-7 and PHQ-9 scores. Tr. 1282. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Dieter's opinion.

### III. Remedy

The Court finds this is a rare instance where remand for an award of benefits is appropriate. The credit-as-true rule has been satisfied here. First, the ALJ erred in his evaluation of Plaintiff's symptom testimony and the medical opinions of Dr. Miller and Dr. Dieter. Next, the record is fully developed. Plaintiff's case has now been before two ALJs after remand by the Appeals Council. The record contains multiple medical opinions as well as medical expert and vocational expert testimony. The Commissioner contends that factual conflicts and ambiguities in the record preclude remand for benefits, relying on the same evidence as the ALJ to show that Plaintiff's symptoms improved. Def.'s Br. 4–5.[6] As explained above, this is not an evidentiary

---

[6] Like the ALJ, the Commissioner also relies on the testimony of Dr. Strahl finding that Plaintiff's symptoms improved. Def.'s Br. 5. As discussed above, Dr. Strahl's testimony that Plaintiff no longer met the listing criteria by mid-2018 was not a clear and convincing reason to reject Plaintiff's symptom testimony. Further, Dr. Strahl was a non-examining physician that did not have any of Plaintiff's records from April 2019 onward, including the functional assessments by Plaintiff's treating physician, Dr. Miller, and an examining physician, Dr. Dieter. Because the ALJ failed to give specific and legitimate reasons to discount Dr. Miller and Dr. Dieter's opinions, their opinions

conflict, but rather an instance of the ALJ cherry-picking evidence to support his theory. Remanding for further proceedings here would not address any "conflicts" in the record, but instead permit a *third* ALJ to revisit the medical opinions and testimony that were already rejected for legally insufficient reasons. Further proceedings would serve no useful purpose. *See Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Finally, if Plaintiff's symptom testimony and the opinions of Dr. Miller and Dr. Dieter were credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff testified that her concentration and memory are poor. If she goes somewhere by herself, she forgets where she came from or how to get back home. Tr. 84. She has difficulty focusing, and gets stressed and angry when she is tasked with anything. Tr. 83, 85. Both doctors provided moderately severe and severe limitations in nearly every area of mental functioning in November 2018, April 2019, and October 2020. "Moderately severe" means "able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity) more than 20 percent of the work day or work week." Tr. 1316. "Severe" means "not able to perform designated task or function on regular, reliable, and sustained schedule." *Id.*

In November 2018, Dr. Miller provided a moderately severe limitation in Plaintiff's ability to carry out very short and simple instructions, as well as severe limitations in Plaintiff's ability to carry out detailed instructions and maintain attention and concentration for extended periods of time. Tr. 1316. He provided severe limitations in performing activities within a

---

are credited "as a matter of law" and entitled to greater weight than Dr. Strahl's opinion. *See Lester v. Chater*, 81 F.3d 812, 834 (9th Cir. 1995).

schedule, maintaining regular attendance, and being punctual within customary tolerances. *Id.* He also provided severe limitations for Plaintiff's ability to complete a normal workday and week without interruptions from psychologically based symptoms. Tr. 1317. In April 2019, Dr. Dieter provided several severe limitations on a similar form. She too opined that Plaintiff is severely limited in her ability to carry out instructions, maintain attention and concentration, sustain an ordinary routine without special supervision, and complete a normal workday and week without interruptions from psychologically based symptoms. Tr. 1322. In October 2020, Dr. Miller again opined that Plaintiff was severely limited in understanding and carrying out detailed instructions, maintaining attention and concentration, performing activities within a schedule, and completing a normal workday and week without interruption. Tr. 1488–89.

The vocational expert testified that a person who is absent more than two days per month or off task more than 20% is unemployable. Tr. 89. Based on this testimony, Plaintiff would be unable to maintain employment due to her severe mental functioning limitations confirmed by Dr. Miller and Dr. Dieter's assessments.

All three requirements of the credit-as-true rule have been satisfied. In a final attempt, the Commissioner asserts that "serious doubt" remains regarding whether Plaintiff is disabled based on evidence of Plaintiff's improved symptoms. Def.'s Br. 8. The Court has already explained why that argument fails. In fact, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's decision finding Plaintiff not disabled beginning July 1, 2018 is REVERSED and this case is REMANDED for award of benefits.

IT IS SO ORDERED.

DATED this 10th day of August, 2023.

/s/Michael J. McShane  
Michael J. McShane  
United States District Judge